CUTOLO BARROS LLC
Jason N. Sena, Esq. (016842012)
46-50 Throckmorton Street
Freehold, New Jersey 07728
(732) 414-1170
Attorneys for Plaintiff

|  |  |  |
|---|---|---|
| | ) | SUPERIOR COURT OF NEW JERSEY |
| MONMOUTH COUNTY REPUBLICAN | ) | LAW DIVISION: MONMOUTH COUNTY |
| COMMITTEE, | ) | DOCKET NO.: MON-L- |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | |
| vs. | ) | |
| | ) | |
| TAHESHA WAY, in her official capacity as | ) | **VERIFIED COMPLAINT IN LIEU** |
| Secretary of State of New Jersey; and | ) | **OF PREROGATIVE WRITS SEEKING** |
| MONMOUTH COUNTY | ) | **TEMPORARY AND INJUNCTIVE RELIEF** |
| BOARD OF ELECTIONS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| (In re the 2020 General Election). | ) | |

Plaintiff, Monmouth County Republican Committee brings this action in lieu of

prerogative writs against Defendants Tahesha Way, in her official capacity as Secretary of State

of New Jersey, and the Monmouth County Board of Elections, to enjoin enforcement of P.L.

2020, c. 72 and Executive Order 177 (Murphy, 2020) ("EO 177") pending issuance of the

"guidelines" and "appropriate standards" relative to the November 3, 2020 General Election

mandated by P.L. 2020, c. 72 and EO 177 by the Secretary of State or by an Order of this Court,

and to obtain all other appropriate relief.

## PARTIES

1.      Plaintiff Monmouth County Republican Committee (the "MCRC") is a county political party representing over 120,000 registered Republican voters in 53 municipalities which nominates candidates for public office.

2.      Defendant Tahesha Way is the Secretary of State of New Jersey.  Secretary Way is New Jersey's chief elections officer and oversees all elections within New Jersey. Her duties include ensuring that all election laws and campaign disclosure requirements are enforced, certifying the official lists of candidates for elections, and certifying election results. She is sued in her official capacity.

3.      Defendant Monmouth County Board of Elections, is, and at all times hereinafter mentioned was, a six-person entity comprised of three Republican and three Democratic representatives who serve as Commissioners and is responsible for, among other things, receiving, canvassing, counting and recounting mail-in ballots and provisional ballots and administering the drastic changes to New Jersey election law imposed by P.L. 2020, c.72 and EO 177, including without limitation the security of and retrieval of ballots from ballot drop boxes and the monitoring of poll workers at polling place.

## HISTORY OF VOTE-BY-MAIL GAMESMANSHIP IN NEW JERSEY

4.      In 2009, the New Jersey legislature significantly altered its vote-by-mail law to permit any registered voter to cast a vote in any election by mail for any reason simply by requesting a vote-by-mail ballot, where voting by mail (previously referred to voting "absentee") was only permitted under certain specific circumstances.

5.      In the 2017 General Election, Philip Murphy was elected to serve as the Governor of the State of New Jersey.

2

6.      Since Governor Murphy took office in 2018, abrupt changes have been made to the vote-by-mail law by the Democratic-led legislature in the months immediately preceding every General Election.

7.      Following the 2018 Republican Primary, the campaign for then-U.S. Senate candidate Bob Hugin rolled out a first of its kind, multimillion-dollar vote-by-mail operation to be implemented in his bid for the upcoming 2018 General Election.

8.      In August 2018, shortly after news of the Hugin campaign's vote-by-mail operation became public, the Democratic-led Legislature fortuitously decided to amended the vote-by-mail law to require that any voter that chose to request a vote by mail ballot in 2016 – a Presidential election year with historically high turnout – would **automatically** receive a vote-by-mail ballot in the 2018 General Election, which included Congressional mid-term elections and a U.S. Senate race in New Jersey.

(https://www.app.com/story/news/politics/elections/2018/09/13/election-2018-nj-vote-mail-law-confuses-voters-election-staff/1279843002/)

9.      Following the abrupt change in law in 2018, the Asbury Park Press reported that "New Jersey Secretary of State's office, which did not return calls for comment, was hesitant to give guidance on questions that weren't spelled out in the law" to County Clerks, who were responsible for administering the law and issuing the vote-by-mail ballots to voters.

10.     In 2019, the Democratic-led legislature again changed the vote-by-mail law in August 2019 to provide that all votes who received a VBM ballot in the 2017 or 2018 General Elections would be sent VBM ballot **for life** unless they opt-out through their County Clerk's office.  As reported by NJ Advance Media, the significant influx of VBM ballots "could help…Democrats…keep their majority in the lower chamber of the Legislature, if not expand it"

in connection with the 2019 General Election. (https://www.nj.com/politics/2019/08/murphy-signs-law-fixing-mail-in-ballot-glitch-in-time-for-the-november-election.html).

11.     On March 9, 2020, Governor Murphy issued Executive Order 103 (Murphy, 2020) which declared a State of Emergency due to COVID-19, which has been extended by subsequent Executive Orders and continues to this day.

12.     Using the cover of the State of Emergency declared by EO 103 and its progeny, the vote-by-mail laws were changed yet again on the event of the Spring 2020 elections, which is consistent with the above-described pattern of changing the vote-by-mail laws in the months immediately prior to an election.  On March 19, Governor Murphy issued Executive Order 105 (March 19, 2020) which provided that "there will be no polling places in the May 12, 2020 elections," and that the election "shall be conducted solely via vote-by-mail ballots, which will automatically be sent to all registered voters without the need for an application to receive a vote-by-mail ballot." (https://nj.gov/infobank/eo/056murphy/pdf/EO-105.pdf)\)

## DIRECT EVIDENCE OF THE REJECTION OF LEGAL VOTES AND RECEIPT OF ILLEGAL VOTES IN EVERY ELECTION THAT HAS OCCURRED IN 2020

13.     Each election that has occurred since Governor Murphy declared said State of Emergency 190 days ago has resulted in lawful votes being rejected (or not counted at all) or illegal votes being received.

14.     Following the May 12, 2020 election in the City of Paterson, New Jersey, the Attorney General indicted four individuals on charges of voter fraud, including a City Councilman and Councilman-elect. The charges filed stem from what is alleged to be a ballot harvesting scheme where the defendants collected more than three VBM ballots from registered voters in violation of the "bearer law" and returned those ballots to the Board of Elections for canvassing.

(https://www.nj.gov/oag/newsreleases20/pr20200625a.html#:~:text=However%2C%20New%20
Jersey%20also%20allows%20a%20voter%20to,return%20the%20ballot%20on%20behalf%20of
%20the%20vote)

15.     Following the filing of an election contest by an aggrieved party in the May 12,
2020 election, a Judge of the Superior Court of New Jersey invalidated the election entirely,
ruling that it was so rife with fraud that it was "not a was not the fair, free and full expression of
the intent of the voters." (https://www.nytimes.com/2020/08/19/nyregion/nj-election-mail-
voting-fraud.html)

16.     Undeterred by the fraud that was discovered in the May 12th election in Paterson,
Governor Murphy issued Executive Order 144 (May 15, 2020), which required that the July
2020 Primary Election (which was moved from June 2020 by a prior Executive Order) to be
conducted primarily by mail.

17.     Not surprisingly, the July primary was plagued with voting problems. More than
40,000 ballots were rejected throughout New Jersey - eight times as many rejected ballots as the
2016 Primary Election.

18.     The unprecedented tidal wave of vote-by-mail ballots received by County Board
of Elections resulted in significant delays in canvassing and certification of the election results.
The National Guard was dispatched to assist Board of Elections in canvassing the election results
due to the high volume of ballots received and, seven (7) counties, including Monmouth County,
were required to petition the Superior Court for extensions of the certification deadline imposed
by EO 144.  As a result, the Secretary of State was unable to certify the results of the July 2020
Primary Election for *more than one month* after the election actually occurred.

19.     Equally unsurprising is the fact that enormous numbers of registered voters were disenfranchised in the July 2020 Primary Election as a result of the mandate that everyone except the disabled vote-by-mail or provisional ballot.  On September 15, 2020, the Associated Press reported that the Sussex County Board of Elections discovered 1,666 unopened vote-by-mail ballots in a "mislabeled bin" found in a "secure area" at the county election office.  Those 1,666 votes were not officially counted, though the Sussex County Board of Elections claims that these votes "did not change the outcome of any races."

(https://apnews.com/3654a728d86011366b57bfe6c66fe9be).

## EXECUTIVE ORDER 177 AND SUBSEQUENT REMEDIAL LEGISLATION

20.     During an August 13, 2020 interview, Dr. Anthony Fauci, director of the National Institute of Allergy and Infectious Diseases, said, "there is no reason why we can't vote in person" so long as polling places follow appropriate social distancing and sanitary measures.

(https://www.reuters.com/article/uk-factcheck-fauci-in-person-voting-idUSKBN25U2BB)

21.     **The next day,** Governor Murphy issued Executive Order 177 (August 14, 2020) which, perplexingly, prohibits machine voting (unless a voter is "disabled").  EO 177 provides that the 2020 General Election would be conducted primarily through vote-by-mail in essentially the same manner as the July 2020 Primary Election.  EO 177 further provides that "any voter who appears at a polling place on November 3, 2020 and does not return a voted mail-in Ballot… shall vote via a provisional ballot, except that accommodations will be made for voters with disabilities." (https://nj.gov/infobank/eo/056murphy/pdf/EO-177.pdf)

22.     EO 177 further requires each county Board of Elections to establish at least 10 "secure" ballot drop box locations for voters to deposit completed vote-by-mail ballots throughout each county and that "[t]he Secretary of State shall establish guidelines for the

6

placement of the ballot drop boxes, the security of the ballot drop boxes, and the schedule for

ballot pickup from the ballot boxes." Id.

23.     EO 177 further provides that

[t]he county Boards of Elections shall designate each polling
place as a location to receive voted mail-in ballots. A voter
may return only the mail in ballot that they personally voted
**to their designated polling place**. **The Secretary of State
shall establish appropriate standards** for the acceptance
of mail-in ballots, including, but not limited to, the poll
worker verification that the voter returning the voted mail-in
ballot at the polling place is the individual who voted the
mail-in ballot, the securing of the returned mail-in ballots,
and the return of the mail-in ballots to the county Boards of
Elections after the close of polls.

Id. (emphasis added).

24.     Perhaps most egregiously, EO 177 further provides that

every ballot **without a postmark**, and ballots mis-marked
and confirmed by the post office that those ballots were
received by the post office on or before November 3, 2020,
that is received by the county Boards of Elections from the
United States Postal Service within forty-eight (48) hours of
the closing of polls on November 3, 2020, shall be
considered valid and shall be canvassed, assuming the ballot
meets all other statutory requirements.

Id. (emphasis added).

25.     Four days later on August 18, 2020, the Governor and Secretary of State were sued

in the matter of Donald J. Trump for President, Inc. v. Murphy, Case No. 20-cv-10753 for various

violations of federal election law and the United States Constitution resulting from EO 177.

26.     In an apparent effort to cure the obvious Constitutional violations cited in the

Trump case, the Democratic-led legislature quickly codified portions of EO 177 on August 28,

2020 through amendments to the vote-by-mail law contained in Title 19.  See P.L. 2020, c. 72.

27.     Like EO 177, the Legislature's amendments to N.J.S.A. 19:63-31(g) prohibit in-

person machine voting in the November 2020 General Election and requires that "[a]ny voter

who appears at a polling place on the day of the November 2020 General Election and does not

return a voted mail-in ballot… shall vote via a provisional ballot, except that accommodations

will be made for voters with disabilities."

28.     As amended, N.J.S.A. 19:63-31(u) provides that "[t]he Secretary of State shall

establish other appropriate standards for ensuring that all voters with disabilities are able to

exercise their right to vote in the November 2020 General Election."

29.     As amended, N.J.S.A. 19:63-16.1 requires the Secretary of State to "in

consultation with county boards of elections…establish rules and regulations necessary to ensure

the secure and successful implementation of the mail-in ballot drop boxes required by this

section."

30.     As amended, N.J.S.A. 19:63-31(h) requires the following:

> the county boards of elections shall designate each polling
> place as a location to receive voted mail-in ballots. A voter
> may return only the mail-in-ballot that they personally voted
> **to their <u>designated polling place</u>. The Secretary of State
> shall establish appropriate standards for the acceptance
> of mail-in ballots**, including, but not limited to, the poll
> worker verification that the voter returning the voted mail-in
> ballot at the polling place is the individual who voted the
> mail-in ballot, the securing of the returned mail-in ballots,
> and the return of the mail-in ballots to the county boards of
> elections after the close of polls.

(emphasis added).

31.     Vote-by-mail ballots are required to be received by voters no later than October 5,

2020 and are being mailed by the Monmouth County Clerk in the immediate future.  N.J.S.A.

19:63-31(j) (requiring ballots to be received by voters no later than the 29th day before the

election).

32.     To date, neither the Secretary of State nor the Board of Elections have provided

any of the written procedures, rules and regulations or guidance required by P.L. 2020, c.72.

Despite the fact that voters will have the ability to deposit ballots at drop-boxes in a matter of days, the Secretary of State and Board of Elections have failed to issue and rules or guides addressing the following glaring issue: i) the general security of ballot drop boxes, including how long video surveillance footage will be maintained and who will pay for it; ii) the collection and storage of ballots from drop boxes; iii) the canvassing of ballots collected from drop boxes; iv) how the Board of Elections intends to enforce the "bearer law" with regard to drop boxes; v) how the Board of Elections intends to verify that ballots deposited in a drop box were not deposited by a voter that already machine voted; vi) how the Board of Elections intends to collect and store vote-by-mail ballots received at polling locations versus the storage of provision ballots, which is governed by statute; and vii) what the "appropriate standards" are for determining whether a person claiming to be disabled has the right to machine vote.

33.     MCRC placed written demand on the Board of Elections to disclose the written rules and regulations concerning the safety and security of the drop boxes in Monmouth County but received no formal response.

34.     To date, the Secretary of State has failed to comply with the rulemaking mandate imposed by P.L. 2020, c.72, leaving the Board of Elections, political parties and voters blowing in the wind as the 2020 General Election quickly approaches.

## **COUNT ONE**
### **Action in Lieu of Prerogative Writs to Compel Fulfillment of Official Duties**

35.     Plaintiff incorporates all of the foregoing allegations as if set forth at length.

36.     Defendants have failed to fulfil their official duties to promulgate rules, regulations and official guidance in connection with the 2020 General Election as required first by EO 177 and then by P.L. 2020, c.72.

37.     This is not inconsistent with the scenario thrust upon the counties in connection with the 2018 and 2019 elections where the Secretary of State ignored requests for guidance concerning the abrupt changes to the vote-by-mail law.

38.     The absence of any rules governing the above-described voting procedures creates a scenario where chaos will abound, inconsistent procedures may be employed at different polling locations and where no person or entity will be held responsible if lawful votes are rejected or illegal votes are received.

**WHEREFORE**, MCRC asks the Court to enter judgment in its favor and provide the following relief:

a.     A judgment compelling the Secretary of State and Board of Elections to fulfill their official duties and issue all rules and regulations, guidance and written procedures required by P.L. 2020, c.72 and any Order of this Court;

b.     A temporary injunction restraining the collection of ballots from drop boxes during the pendency of this action;

c.     All other preliminary and permanent relief that Plaintiffs are entitled to, and that the Court deems just and proper.

## <u>COUNT TWO</u>

### Violation of 3 U.S.C. §1, 2 U.S.C. §7, 2 U.S.C. §1

39.     Plaintiff incorporates all of the foregoing allegations as if set forth at length.

40.     Congress has established that "[t]he electors of President and Vice President shall be appointed, in each State, on the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President." 3 U.S.C. §1.

41.     2 U.S.C. §7 provides that "[t]he Tuesday next after the 1st Monday in November, in every even numbered year, is established as the day for the election, in each of the States and

Territories of the United States, of Representatives and Delegates to the Congress commencing on the 3d day of January next thereafter."

42.     2 U.S.C. §1 provides that, "[a]t the regular election held in any State next preceding the expiration of the term for which any Senator was elected to represent such State in Congress, at which election a Representative to Congress is regularly by law to be chosen, a United States Senator from said State shall be elected by the people thereof for the term commencing on the 3d day of January next thereafter."

43.     This trio of statutes "mandates holding all elections for Congress and the Presidency on a single day throughout the Union." Foster v. Love, 522 U.S. 67, 70 (1997).

44.     The word "election" in 3 U.S.C. §1 means the "combined actions of voters and officials meant to make a final selection of an officeholder." Foster, 522 U.S. at 71. It is the consummation of the process of electing an official. 103. By its terms then, 3 U.S.C. §1 requires that the 2020 general election be consummated on Election Day (November 3, 2020).

45.     A mail ballot is not a legal vote unless it is marked and cast on or before Election Day. States cannot create a process where ballots marked or mailed after Election Day can be considered timely.

46.     Consistent with 3 U.S.C. §1, "the Voting Rights Act Amendments of 1970 require that citizens be allowed to vote by absentee ballot in Presidential elections on or before the day of the election." Voting Integrity Project, Inc. v. Bomer, 199 F.3d 777 (5th Cir. 2000); 52 U.S.C. §10502(d).

47.     Those "uniform rules for federal elections" are both "binding on the States" and superior to conflicting state law: "'[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict

extends, ceases to be operative.'" Foster, 522 U.S. at 69. In other words, if a state law governing elections for federal offices "conflicts with federal law," that state law is "void." Id. at 74.

48.     P.L. 2020, Ch.72 conflicts with the three statutes setting a uniform Election Day by effectively extending Election Day beyond November 3. It allows ballots that are **not postmarked** to be counted if they are received within 48 hours of the polls closing. Because mail sent locally can arrive within one day of being sent, see U.S. Postal Serv., FAQs: What are the Types of First-Class Mail?, Article No. 000003138 (Jan. 26, 2020), https://bit.ly/2EyfERB, this change in law allows individuals to cast a vote after election day and to have that vote counted, which is illegal.

**WHEREFORE**, MCRC asks this Court to enter judgment in its favor and provide the following relief:

a.     A declaratory judgment that the provisions of EO 177 and P.L. 2020, Ch. 72 allowing for counting of un-postmarked ballots received within 48-hours of election day violates the 3 U.S.C. §1, 2 U.S.C. §7 and 2 U.S.C. §1.

b.     A permanent injunction prohibiting Defendant from implementing and enforcing the offending provisions of EO 177 and P.L. 2020, Ch. 72;

c.     A temporary restraining order and preliminary injunction granting the relief specified above during the pendency of this action; and

d.     All other preliminary and permanent relief that Plaintiffs are entitled to, and that the Court deems just and proper.

CUTOLO BARROS LLC
Attorneys for Plaintiff
/s/ *Jason N. Sena*
_____
Jason N. Sena, Esq.

Dated: September 24, 2020

## CERTIFICATION PER RULE 4:5-1

Pursuant to Rule 4:5-1, it is hereby stated that the instant matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding to the best of our knowledge or belief, except that the issue described in Count II is also before the Court in the matter of <u>Donald J. Trump for President, Inc. v. Murphy</u>, Case No. 20-cv-10753 (MJS), which is pending final disposition. Also, to the best of Plaintiff's belief, no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this pleading, as subject to the Notice to other Candidates as required by the proposed form of Order to Show Cause, there are no other known parties that should be joined in the within action. In addition, Plaintiff recognizes the continuing obligation of each party to file and serve on all parties and the Court an amended certification if there is a change in the facts stated in this original certification.

CUTOLO BARROS LLC
Attorneys for Plaintiff
/s/ *Jason N. Sena*

_____

Jason N. Sena, Esq.

Dated: September 24, 2020

## VERIFYING CERTIFICATION OF MONMOUTH COUNTY
## REPUBLICAN COMMITTEE

DANIELLE BANYACSKI, of full age, hereby certifies and says:

**(1)** I am the Executive Director of the Monmouth County Republican Committee, Plaintiff in the within action, and as such I am familiar with the facts of this Verified Complaint.

**(2)** I have read and reviewed the foregoing Verified Complaint and hereby certify that same is true to the best of my information, knowledge and belief. The instant Verified Complaint is filed and the instant Application for entry of an Order to Show Cause seeking summary injunctive relief are made in truth and in good faith for the causes set forth therein.

I certify that the foregoing statement made by me is true to the best of my information, knowledge and belief; I am aware that if this statement is willfully false, I am subject to punishment

Danielle Banyacski, Executive Director
Monmouth County Republican Committee

Date:  September 24, 2020

CUTOLO BARROS LLC
Jason N. Sena, Esq. (016842012)
46-50 Throckmorton Street
Freehold, New Jersey 07728
(732) 414-1170
Attorneys for Plaintiff

| | |
|---|---|
| MONMOUTH COUNTY REPUBLICAN COMMITTEE, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION:  MONMOUTH COUNTY DOCKET NO.: MON-L- |
| Plaintiff, | Civil Action |
| vs. | **ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS AND INJUNCTIVE RELIEF** |
| TAHESHA WAY, in her official capacity as Secretary of State of New Jersey; and MONMOUTH COUNTY BOARD OF ELECTIONS, | |
| Defendants. | |
| (In re the 2020 General Election). | |

**THIS MATTER** having been opened to the Court by Cutolo Barros, LLC, attorneys for Plaintiff Monmouth County Republican Committee; and Notice having been given to Defendantas Tahesha Way, in her official capacity as Secretary of State of New Jersey, and the Monmouth County Board of Elections, and the Court having reviewed the arguments of counsel, and in good sufficient cause appearing for the entry of this order;

**IT IS THEREFORE**, on this _____ day of September 2020;

(1)      **ORDERED** that a Hearing shall be held on _____ day of September 2020 in the Monmouth County Courthouse, Freehold, New Jersey by telephonic or other electronic means consistent with the present Covid-19 protocols, in regard to the instant Verified Complaint and Motion for Permeant Injunctive Relief, in regard to the November 3, 2020 General Election, in Monmouth County, for entry of a Final Order ordering Defendant Tahesha Way, in her official

capacity as Secretary of State of New Jersey, and the Monmouth County Board of Elections, to issue "guidelines" and "appropriate standards" relative to the November 3, 2020 General Election as mandated by P.L. 2020, c. 72 and EO 177; and it is

(2)      **FURTHER ORDERED** that pending Emergent Hearing Date set forth in Paragraph 1 of this order, and until otherwise ordered by this Court, Defendants are by this ordered hereby ENJOINED and RESTRAINED from collecting ballots from drop boxes during the pendency of this action;

(3)      **FURTHER ORDERED** that copies of this Order shall be in lien of a summons and shall be served, together with the Verified Complaint and all pleadings in support of this Application, on the same day as Plaintiff's attorney's receipt of a copy of this Order, upon Defendant Tahesha Way, in her official capacity as Secretary of State of New Jersey, and the Monmouth County Board of Elections via Email to same and their counsel, and via NJ Ecourts filing, and via either hand-delivery or (in light of the Covid-19 pandemic) via email with a telephone notice of same; Plaintiff shall file on the NJ Ecourts docket a Certificate of Service as to same.

(4)      **IT IS FURTHER ORDERED** that:

(A)      Defendants may move to dissolve or modify the temporary restraints herein contained on two days notice to Cutolo Barros LLC.

(B)      A copy of this order to show cause, Verified Complaint, brief, and all supporting affidavits or certifications submitted in support of this application be served upon Defendant's counsel, who has agreed to accept service, within _____ days of the date hereof, in accordance with *R*. 4:4-3 and *R*. 4:4-4, this being original process.

(C)     Plaintiff must file with the court its proof of service of the pleadings on Defendants no later than one day before the return date.

(D)     Defendants shall file and serve a written response to this order to show cause and the request for entry of injunctive relief by proof of service by _____, 2019. The original documents must be filed with the Clerk of the Superior Court in the county listed above. A directory of these offices is available in the Civil Division Management Office in the          county          listed          above          and          online          at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf. You must send a copy of your opposition papers directly to Judge _____, whose address is Bergen County  Courthouse, _____. You must also send a copy of your opposition papers to the Plaintiff's attorney whose name and address appears above, or to the Plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file your opposition and pay the required fee of $175.00 and serve your opposition on your adversary, if you want the court to hear your opposition to the injunctive relief the Plaintiff is seeking.

(E)     Plaintiff must file and serve any written reply to the Defendants' order to show cause opposition by _____, 2019. The reply papers must be filed with the Clerk of the Superior Court in the county listed above and a copy of the reply papers must be sent directly to the chambers of Judge _____.

(F)     If the Defendants do not file and serve opposition to this order to show cause, the application will be decided on the papers on the return date and relief may be granted by default, provided that the Plaintiff files a proof of service and a proposed form of order at least three days prior to the return date.

(G)    If the Plaintiff has not already done so, a proposed form of order addressing the relief sought on the return date (along with a self-addressed return envelope with return address and postage) must be submitted to the court no later than three days before the return date.

(H)    Defendants take notice that the Plaintiff has filed a lawsuit against you in the Superior Court of New Jersey. The verified complaint attached to this order to show cause states the basis of the lawsuit. If you dispute this complaint, you, or your attorney, must file a written answer to the complaint and proof of service within 35 days from the date of service of this order to show cause; not counting the day you received it.

(I)    These documents must be filed with the Clerk of the Superior Court in the county listed above. A directory of these offices is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf. Include a $175.00 filing fee payable to the "Treasurer State of New Jersey." You must also send a copy of your Answer to the Plaintiff's attorney whose name and address appear above, or to the plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve your Answer (with the fee) or judgment may be entered against you by default. Please note: Opposition to the order to show cause is not an Answer and you must file both. Please note further: if you do not file and serve an Answer within 35 days of this Order, the Court may enter a default against you for the relief Plaintiff demands.

(J)    If you cannot afford an attorney, you may call the Legal Services office in the county in which you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.

A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

(K)     The court will entertain argument, but not testimony, on the return date of the order to show cause, unless the court and parties are advised to the contrary no later than ____ days before the return date.

_____
                                                          J.S.C.

_____ opposed
_____ unopposed

CUTOLO BARROS LLC
Jason N. Sena, Esq. (016842012)
46-50 Throckmorton Street
Freehold, New Jersey 07728
(732) 414-1170
Attorneys for Plaintiff

| | | |
|---|---|---|
| MONMOUTH COUNTY REPUBLICAN COMMITTEE, | ) ) ) | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MONMOUTH COUNTY DOCKET NO.: MON-L- |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | |
| vs. | ) ) | **ORDER COMPELLING DEFENDANTS TO FULFILL OFFICIAL DUTIES AND** |
| TAHESHA WAY, in her official capacity as Secretary of State of New Jersey; and MONMOUTH COUNTY BOARD OF ELECTIONS, | ) ) ) ) | **PERMANENTLY ENJOINING ENFORCEMENT OF PORTIONS OF** <br> **N.J.S.A. 19:63-31(m)** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| (In re the 2020 General Election). | ) | |

THIS MATTER having been opened to the Court by Cutolo Barros, LLC, attorneys for

Plaintiff Monmouth County Republican Committee for Relief in a summary manner in accord with

N.J.S.A. Title 19, and Notice having been given to Defendant Tahesha Way, in her official capacity

as Secretary of State of New Jersey, and the Monmouth County Board of Elections, and the Court

having reviewed the arguments of counsel, and in good sufficient cause appearing for the entry of

this order;

IT IS THEREFORE, on this _____ day of September 2020;

(1)     **ORDERED** that a judgment compelling the Secretary of State and Board of

Elections to fulfill their official duties and issue all rules and regulations, guidance and written

procedures required by P.L. 2020, c.72 and any Order of this Court within seven (7) days;

(2)     **FURTHER OREDERED** that the provisions of <u>N.J.S.A.</u> 19:63-31(m) permitting the counting of un-postmarked ballots received within 48-hours of election day are unlawful and violate federal law - specifically 3 U.S.C. §1, 2 U.S.C. §7 and 2 U.S.C. §1;

(3)     **FURTHER ORDERED** that Defendants are permanently enjoined from implementing and enforcing the offending provisions <u>N.J.S.A.</u> 19:63-31(m);

(4)     **FURTHER ORDERED** that a true copy of this Order shall be served via regular mail (or in light of the Covid-19 Pandemic via mail with telephone notice of same) upon Defendant Tahesha Way, in her official capacity as Secretary of State of New Jersey, and the Monmouth County Board of Elections their counsel, and via NJ Ecourts filing.

_____
                                                                J.S.C.

_____ opposed
_____ unopposed

| | | |
|---|---|---|
| MONMOUTH COUNTY REPUBLICAN COMMITTEE, | ) ) ) | SUPERIOR COURT OF NEW JERSEY LAW DIVISION:  MONMOUTH COUNTY DOCKET NO.: MON-L- |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | |
| vs. | ) | |
| | ) | |
| TAHESHA WAY, in her official capacity as Secretary of State of New Jersey; and MONMOUTH COUNTY BOARD OF ELECTIONS, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| (In re the 2020 General Election). | ) | |
| | ) | |

---

**BRIEF OF MONMOUTH COUNTY REPUBLICAN COMMITTEE IN SUPPORT OF ORDER TO SHOW CAUSE**

---

CUTOLO BARROS LLC
Jason N. Sena, Esq. (016842012)
46-50 Throckmorton Street
Freehold, New Jersey 07728
(732) 414-1170
Attorneys for Monmouth County
 Republican Committee

On the Brief:
Jason N. Sena, Esq. (016842012)

## PRELIMINARY STATEMENT

Plaintiff, the Monmouth County Republican Committee ("MCRC"), brings this emergent application to implement immediate safeguards to protect the integrity of the electoral process by compelling the Secretary of State to perform her statutorily-mandated official duties and issue the regulations and guidelines required by recent amendments to Title 19 concerning the 2020 General Election.  This application also seeks a permanent injunction against the implementation of a specific provision of the same recent amendment to Title 19 which facially violates Federal law by allowing the Board of Elections to canvas ballots that are cast after the close of the polls on November 3, 2020.  Put another way, the provision at issue allows people to vote after the election.

Since 2018, the Democratic-led Legislature has made abrupt and substantive changes to the vote-by-mail process in the months immediately before to every general election.  The 2020 General Election is no different, as the Governor issued an Executive Order under the cover of the ongoing State of Emergency to prohibit machine voting (unless a voter is "disabled") and to require all registered voters to either cast a vote-by-mail ballot or go through the lengthy process of completing a provisional ballot at the police place if they wish to exercise their right to vote. Every election conducted thus far in 2020 using this hastily-concocted procedure has resulted in large-scale voter disenfranchisement and the receipt of illegal votes which were significant enough to be reported by national media outlets. After the Governor and Secretary of State were sued by a candidate for federal office for violating the Constitution by essentially rewriting New Jersey election law, the Democratic-led legislature came to the rescue and codified the Governor's Executive Order by passing amendments to Title 19 mirroring the Executive Order almost verbatim.  These amendments to Title 19 impose an affirmative obligation on the

Secretary of State, in consultation with the Board of Elections, to issues rules and regulations, guidelines and "appropriate standards" which will govern the conduct of the upcoming November 3rd election.

The MCRC and other stakeholders have waited with bated breath for the Secretary of State and Board of Elections to issue these rules and have even taken affirmative steps to notify the Board of Elections of specific and detailed areas of concern.  Yet, the Secretary of State has failed to comply with the mandate of Title 19 to issue these rules for reasons unknown. With the October 5th deadline for delivery of vote-by-mail ballots to voters fast approaching and with no guidelines in place for the collection of these ballots, judicial intervention is required to compel the Secretary of State to perform her official duties so that the 2020 General Election can be conducted in a lawful manner, or to enter an Order establishing appropriate standards. Further, the Court's intervention is required to permanently enjoin the enforcement of a provision of Title 19 which, if implemented, would allow voters to cast ballots after election day in direct violation of Federal law.

## **FACTS**

Plaintiff incorporates the facts set forth in the Verified Complaint filed herewith, which are all matters of public record and cannot be disputed, as if they were set forth at length.

## **LEGAL STANDARD**

Pursuant to Crowe v. DeGioia, a party is permitted to seek relief on an emergent basis through an Order to Show Cause only where emergent relief will "prevent some threatening, irreparable mischief, which should be averted until opportunity is afforded for a full and deliberate investigation of the case." Crowe v. DeGioia, 90 N.J. 126, 132 (1982) (internal citation omitted). For that reason, a party seeking emergent relief must show: (1) that irreparable harm will ensue if the application is not granted; (2) that the legal right underlying the applicant's claim is settled; (3) that the material facts are uncontroverted and demonstrate a reasonable probability of the plaintiff's success on the merits; and (4) that the relative hardship of the parties militates in favor of granting the injunction. Id. at 132-34.

## LEGAL ARGUMENT

**I.  PLAINTIFF HAS A SETTLED LEGAL RIGHT TO THE RELIEF SOUGHT AND WILL ALMOST CERTAINLY SUCCEED ON THE MERITS**

A.  THE SECRETARY OF STATE IS STATUTORILY REQUIRED TO ISSUE RULES AND REGULATIONS, GUIDELINES AND "APPROPRIATE STANDARDS" PERTAINING TO THE 2020 GENERAL ELECTION BUT HAS FAILED TO DO SO

There is no doubt that MCRC will prevail in compelling the Secretary of State and Board of Elections to comply with their official duties, which are mandated by statute.  In August 2020, the New Jersey Legislature amended Title 19 to codify Executive Order 177.  "Any voter who appears at a polling place on the day of the November 2020 General Election and does not return a voted mail-in ballot… shall vote via a provisional ballot, except that **accommodations will be made for voters with disabilities**."  N.J.S.A. 19:63-31(g) (emphasis added).  The Legislature imposed a duty upon the Secretary of State to determine what "accommodations" must be made by directing "[t]he Secretary of State shall establish other appropriate standards for ensuring that all voters with disabilities are able to exercise their right to vote in the November 2020 General Election."  N.J.S.A. 19:63-31(u). Put another way, voters who a poll worker determines are "disabled" will be allowed to machine vote, as was the case with the 2020 Primary Election. However, there is no standard for determine who meets the definition of "disabled" contained in Title 19 nor a procedure as to how poll workers are to verify with the Board of Elections that the voter claiming to be disabled has not already cast a vote-by-mail ballot *before they are permitted to machine vote*.  It is incumbent upon the Secretary of State to establish these standards and impose safeguards through the rules and regulations which she is required to promulgate by statute. Id.

The Legislature has also required the Secretary of State to "in consultation with county boards of elections…establish rules and regulations necessary to ensure the secure and successful implementation of the mail-in ballot drop boxes required by this section." N.J.S.A. 19:63-16.1. The importance of these regulations cannot be overstated, as there are several glaring areas of concern.  Foremost, the general security of ballot drop boxes, which are unattended, is highly questionable considering that fact that anyone can deposit any number of ballots in a drop box at will.  Without further guidance from the Defendants, it appears that enforcement of the "bearer law" which allows a person to handle and deliver up to three vote-by-mail ballots of others so long as those ballot are properly completed, is impossible.  Additional issues include, but are not limited to, the following: i) how long video surveillance footage will be maintained and who will pay for it; ii) the collection and storage of ballots from drop boxes; iii) the canvassing of ballots collected from drop boxes; iv) how the Board of Elections intends to enforce the "bearer law" with regard to drop boxes, which are una; v) how the Board of Elections intends to verify that ballots deposited in a drop box were not deposited by a voter that already machine voted.

Establishing written procedures to safeguard the use of ballot drop boxes is not a novel area of study.  The Secretary of State for the State of Oregon, which has been voting by mail since the 1990's, has issued an 88-page manual entitled "Vote by Mail Procedure" which provides detailed regulations concerning the conducting of a mail-in election such as the 2020 General Election in New Jersey. (https://sos.oregon.gov/elections/Documents/vbm_manual.pdf). This has been done before.

Further, as amended, N.J.S.A. 19:63-31(h) requires the following:

> the county boards of elections shall designate each polling place as a location to receive voted mail-in ballots. A voter may return only the mail-in-ballot that they personally voted **to their designated polling place**. **The Secretary of State**

> **shall establish appropriate standards for the acceptance of mail-in ballots**, including, but not limited to, the poll worker verification that the voter returning the voted mail-in ballot at the polling place is the individual who voted the mail-in ballot, the securing of the returned mail-in ballots, and the return of the mail-in ballots to the county boards of elections after the close of polls.

(emphasis added).  Clearly, the Secretary of State has an affirmative duty to establish what the "appropriate standard" is for acceptance of vote-by-mail ballots at polling locations.  Handling of paper ballots at polling locations is a topic that the Legislature has dealt with before in the context of provisional ballots.  Indeed, a detailed statutory scheme governs the use, completion, handling, transportation and canvassing of provisional ballots.  See N.J.S.A. 19:53C-1, et seq.

Despite the clear and unambiguous requirement that the Secretary of State establish rules, regulations and procedures governing ballot drop boxes, disabled voters and the acceptance of vote-by-mail ballots at polling places, the Secretary of State has failed to do so.  There is no doubt that MCRC is entitled to a judgment in lieu of a prerogative writ compelling the Secretary of State to comply with her official duties in this regard.

B. THE RECENTLY AMENDED PROVISION OF N.J.S.A. 19:63-31(m) PERMITTING THE CANVASSING OF BALLOTS WITHOUT A POSTMARK THAT ARE RECEIVED WITH 48-HOURS OF THE CLOSURE OF THE POLLS VIOLATES FEDERAL LAW

As recently amended, N.J.S.A. 19:63-31(m) permits ballots, which bear no postmark, to be canvassed if received within 48-hours of the close of the polls.  This is a direct violation of federal law, as it allows votes to be cast after the polls close without the Board of Elections having the ability to determine when the ballot was actually submitted.

> Every ballot **without a postmark**, and ballots mis-marked and confirmed by the post office that those ballots were received by the post office on or before November 3, 2020, that is received by the county boards of elections from the United States Postal Service within 48 hours of the closing

7

> of polls on November 3, 2020, shall be considered valid and shall be canvassed, assuming the ballot meets all other statutory requirements.

N.J.S.A. 19:63-31(m) (emphasis added).

Though the Elections Clause grants states power to set the time, place, and manner of congressional elections, U.S. Const. art. I, §4, cl. 1, it also subordinates that power to federal law. The Clause expressly reserves to "Congress" the power to "at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." Id. Congress also bears similar power under the Electors Clause to "determine the Time of chusing the Electors" for the offices of President and Vice President. U.S. Const., art. II, §1, cl. 4. Pursuant to that authority, Congress passed three statutes that "mandate[] holding all elections for Congress and the Presidency on a single day throughout the Union." Foster v. Love, 522 U.S. 67, 70 (1997).  That Election Day is both "binding on the States" and superior to conflicting state law: "[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative." Id. at 69 (internal citations omitted). Law made by Congress pursuant to the Elections and Qualifications Clauses protect the "right of suffrage … a fundamental article of republican government." Arizona v. Inter Tribal Council of Arizona, Inc., 570 U.S. 1, 26 (2013) (quoting Federalist No. 52).  Preemption thus applies with particular force under the Elections Clauses because "[i]n contrast to the Supremacy Clause, which addresses preemption in areas within the states' historic police powers, the Elections Clause affects only an area in which the states have no inherent or reserved power: the regulation of federal elections." Gonzalez v. Arizona, 677 F.3d 383, 392-93 (9th Cir. 2012). In consequence, "the 'presumption against preemption' and 'plain statement

rule' that guide Supremacy Clause analysis are not transferable to the Elections Clause context."
Id. (internal citations omitted).

Federal law also preempts the provision of Title 19 which allows unmarked vote-by-mail ballots to be canvassed if they are received within 48-hours of the close of polls. The word "election" in 3 U.S.C. §1 means the "combined actions of voters and officials meant to make a final selection of an officeholder." Foster, 522 U.S. at 71.  That means that a vote-by-mail ballot is not a legal vote unless it is marked **and** cast on or before the national Election Day, which is the date of the "'consummation' of the process of selecting an official." Voting Integrity Project, Inc. v. Keisling, 259 F.3d 1169, 1175 (9th Cir. 2001). Moreover, a ballot is cast not when it is marked, but only when it is actually deposited "in the custody of election officials." Maddox v. Bd. of State Canvassers, 149 P.2d 112, 115 (Mont. 1944); see also Keisling, 259 F.3d 1175 ("[V]oting is done not merely by marking the ballot but by having it delivered to the election officials and deposited in the ballot box before the closing of the polls on election day.").  A state law governing elections for federal offices "conflicts with federal law" and is therefore "void" when it sets a different date for the consummation of an election than federal law, as Title 19 does here. Foster, 522 U.S. at 74. Therefore, New Jersey cannot permit ballots cast after Election Day to be counted by permitting unmarked vote-by-mail ballots to be canvassed.

However, that is precisely what New Jersey has done in enacting N.J.S.A. 19:63-31(m). In other words, the law requires election officials to count votes that could have been cast *after* Election Day because, without a postmark, those officials have no way of confirming when a ballot has been cast.  As was the case in Sussex County in the 2020 Primary Election, 1,666 unmarked vote-bail-mail ballots could be miraculously "discovered" in a municipal polling place after election day and the Board of Elections would not be able to verify when the vote was

actually cast. The statute's command to count ballots cast after the uniform Election Day irreconcilably conflicts with Congress's decisions in 2 U.S.C. §§1, 7 and 3 U.S.C. §1 to require that "the combined actions of voters and officials meant to make a final selection of an officeholder" be "consummated" on one uniform, national Election Day. *Foster*, 522 U.S. at 71, 72 n.4. New Jersey's election regime can no more require "the combined actions of voters and officials meant to make a final selection of an officeholder" to stop "prior to federal election day"—which was the issue in <u>Foster</u>—than allow those combined actions to continue after it. *Id.* Either type of regime "purport[s] to affect the timing of federal elections." *Id.* at 73.

Other federal statutes confirm that Congress did not intend voting to continue after Election Day. An election for federal office can only be held at a later date under the following circumstances: "(1) in states that required a majority vote for election, a runoff could be held between federal election day and January when officials take office; and (2) an election could be held on a different date if a vacancy occurred in the office." <u>See</u> <u>Love v. Foster</u>, 90 <u>F.3d</u> 1026, 1029 (5th Cir. 1996), <u>aff'd</u>, 522 <u>U.S.</u> 67 (1997) (citing 3 U.S.C. §8). Neither the New Jersey Legislature, nor the Governor, are free to create any additional exceptions to the rule that voting occur on election day. <u>See</u> <u>Foster</u>, 522 U.S. at 71-72; <u>see also</u> <u>Keisling</u>, 259 F.3d at 1170 ("Without question, Congress has the authority to compel states to hold these elections on the dates it specifies.").

In sum, because <u>N.J.S.A.</u> 19:63-31(m)'s directive to count ballots regardless of whether they were cast after the uniform Election Day "conflicts with federal law such that compliance with both state and federal regulations is impossible," <u>Sikkelee v. Precision Airmotive Corp.</u>, 822 <u>F.3d</u> 680, 688 (3d Cir. 2016), it infringes upon Plaintiff's fundamental right to vote, and it "is void," <u>Foster</u>, 522 <u>U.S.</u> at 74.

## II.    IRREPERABLE HARM WILL RESULT IF THE SECRETARY OF STATE FAILS TO COMPLY WITH HER OFFICIAL DUTIES

Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages. Pecuniary damages may be inadequate because of the nature of the injury or of the right affected. <u>Crowe</u>, 90 N.J. at 132-33.  In <u>Hodge V. Giese</u>, 43 N.J. Eq. 342, 350 (Ch. 1887), the court defined irreparable injury to mean "that the injury shall be a material one, and of such a nature as cannot be adequately redressed by pecuniary damages."  In <u>Scherman v. Stern,</u> 93 N.J. Eq. 626, 631 (E. & A. 1922) the Court stated the following with respect to irreparable injury:

> An injury is irreparable when it cannot be adequately compensated in damages or when there exists no certain pecuniary standard for the measurement of the damage. Inadequacy of damages as a compensation may be due to the nature of the injury itself or the nature of the right or property injured.

<u>See also</u>  <u>Ferraiuolo v. Manno,</u> 1 N.J. 105, 108 (1948).  Preventing voters from exercising their right to franchise has been held to satisfy the irreparable harm standard. <u>See</u> <u>Project Vote v. Blackwell</u>, 455 <u>F.Supp.2d</u> 694, 707-08 (N.D. Ohio 2006) (that people "will continue to be dissuaded from engaging in an important [election-related] activity" constitutes an "irreparable injury"), because it "cannot be alleviated after the election," <u>Council of Alternative Political Parties v. Hooks</u>, 121 <u>F.3d</u> 876, 883 (3d Cir. 1997).

Irreparable harm will result if the Secretary of State is not required to perform her official duties in issuing rules and regulations establishing procedural safeguards for the 2020 General Election. Recent experience from the 2020 Primary Election using essentially the same vote-by-mail framework has resulted in illegal votes being received and elections being overturned as a result.  This procedure has also caused 1,666 voters in Sussex County to be disenfranchised because their vote-bail-mail ballots were placed in a "mislabled" container." We can expect more

of the same in the 2020 General Election, which is expected to have far higher turnout.  The harm caused to the election system as a result of dissuading voters from participating in the process, see Council of Alternative Political Parties v. Hooks, 121 F.3d at 883, and the harm inflicted on voters by having their ballots lost or not counted, or by illegal votes turning the tide in an election, can never be addressed by monetary damages.  As such, Plaintiff meets the second factor of Crowe.

## III.    THE EQUITIES WEIGH IN FAVOR OF GRANTING RELIEF TO MCRC

MCRC clearly meets the third Crowe factor as the equities weigh in its favor.  As stated in Point I above, the Secretary of State and Board of Elections have an unconditional obligation to impose safeguards to guarantee the integrity of the 2020 General Election pursuant to statute.  See N.J.S.A. 19:63-31(u) (as to disabled voters); N.J.S.A. 19:63-16.1 (as to drop boxes); N.J.S.A. 19:63-31(h) (as to accepting VBM ballots at the polling place).  The Defendants have no equitable interest in not complying with their statutory duties.

As to the issue of the illegality of N.J.S.A. 19:63-31(m), which allows ballots bearing no post mark to be counted if received by the Board of Elections within 48-hours, the equities heavily favor MCRC, as the conduct that it condones is completely illegal.

## IV.    THE MATERIAL FACTS ARE UNCONTROVERTED

All facts set forth in the Verified Complaint are gleaned from the public record and cannot be disputed. This case presents purely legal issues.

## CONCLUSION

For the foregoing reasons, Plaintiffs' order to show cause should be granted.

Respectfully submitted,

/s/ Jason N. Sena
Jason N. Sena

CUTOLO BARROS LLC
Jason N. Sena, Esq. (016842012)
46-50 Throckmorton Street
Freehold, New Jersey 07728
(732) 414-1170
Attorneys for Plaintiff

|  |  |  |
|---|---|---|
| MONMOUTH COUNTY REPUBLICAN COMMITTEE, | ) ) ) | SUPERIOR COURT OF NEW JERSEY LAW DIVISION:  MONMOUTH COUNTY DOCKET NO.: MON-L- |
| Plaintiff, | ) ) ) | Civil Action |
| vs. | ) ) ) | NOTICE OF APPLICATION FOR ENTRY |
| TAHESHA WAY, in her official capacity as Secretary of State of New Jersey; and MONMOUTH COUNTY BOARD OF ELECTIONS, | ) ) ) ) ) | OF ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS AND INJUNCTIVE RELIEF |
| Defendants. | ) ) | |
| (In re the 2020 General Election). | ) | |

TO:     GURBIR S. GREWAL
        Attorney General of New Jersey
        c/o Dominic Giova, DAG
        R.J. Hughes Justice Complex
        25 Market Street
        P.O. Box 112
        Trenton, New Jersey 08625

    **TAKE  NOTICE** that  as  soon  as  the  matter  may  be  heard,  attorneys  for  Plaintiff

Monmouth County Republican Committee shall seek emergent relief from the Court, as outlined

in further detail in this application; and

    **TAKE FURTHER NOTICE** that this Notice of Motion and the Attached for Entry of

Order to Show Cause, with Temporary Restraints and Injunctive Relief, have on this 24th day of

September 2020, been submitted to the New Jersey Superior Court, Monmouth County, Monmouth County Courthouse, Freehold New Jersey, via NJ-Ecourts;

Plaintiff request an Emergent Hearing on the relief sought by Plaintiff as set forth in the Proposed Form of Order to Show Cause with Temporary Restraints, and in the Proposed Form of Order to Show Cause with Temporary Restraints, and in the proposed Form of Final Order with Injunctive Relief, said hearing to be held on such date as the Court may set, with it hereby requested that the Court consider holding same telephonically in accord with the present Covid-19 protocols, and in light of the impending deadlines in regard to preparation for the November 3, 2020 General Election;

**TAKE FURTHER NOTICE** that Plaintiff respective request that said Court forthwith enter the Order to Show Cause with Temporary Restraints, setting an immediate date for a hearing on the relief sought by Plaintiffs as set forth in the Application, the Verified Complaint with Exhibits, the Memorandum of Law in support of same, the Proposed Form of Order to Show Cause, and the Proposed Form on Final Order, with any hearing on this Application, as this Court may deem necessary to be held on such date as the Court may direct, in a summary fashion in light of the impending deadlines in regard to preparation for the November 3, 2020 General Election;

**TAKE FURTHER NOTICE** that in support of its Application for Entry of Order to Show Cause with Temporary Restraints, Plaintiffs shall rely upon the Verified Complaint with Exhibits, and the Memorandum of Law submitted herewith, as well as further legal argument and the testimony of witnesses, if necessary and appropriate.

**TAKE FURTHER NOTICE** that pursuant to R. 4:52-1(b), if no Answer or Responsive pleading are timely filed, or if the Defendants do not otherwise timely respond to this Motion,

judgment by default may be entered by the Court against the Defendants, without further notice

for relief requested.

CUTOLO BARROS LLC
Attorneys for Plaintiff

*/s/ Jason N. Sena*

_____

Jason N. Sena, Esq.

Dated: September 24, 2020

# Civil Case Information Statement

## Case Details: MONMOUTH | Civil Part Docket# L-003019-20

**Case Caption:** MONMOUTH COUNTY REPU BLICAN CO
VS TANESHA WAY

**Case Initiation Date:** 09/24/2020

**Attorney Name:** JASON N SENA

**Firm Name:** CUTOLO BARROS LLC

**Address:** 46-50 THROCKMORTON ST
FREEHOLD NJ 07728

**Phone:** 7324141170

**Name of Party:** PLAINTIFF : Monmouth County Republican
Com

**Name of Defendant's Primary Insurance Company**

(if known): None

**Case Type:** ACTIONS IN LIEU OF PREROGATIVE WRITS

**Document Type:** Verified Complaint

**Jury Demand:** NONE

**Is this a professional malpractice case?**  NO

**Related cases pending:** YES

**If yes, list docket numbers:** Donald J. Trump for President, Inc. v.
Murphy, Case No. 20-cv-10753 (MJS)

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Monmouth County
Republican Com?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
#### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**
Election issue

**Do you or your client need any disability accommodations?** NO
      **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
      **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

09/24/2020
Dated

/s/ JASON N SENA
Signed